# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUTRELLA M. BUTLER | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-3140 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**MEMORANDUM**

LOWELL A. REED, Jr., Sr. J                                            APRIL 21, 2010

       Upon consideration of the brief in support of request for review filed by plaintiff (Doc. No. 8), defendant's response, and the reply thereto (Doc. Nos. 10 & 11), the court makes the following findings and conclusions:

       1.      On January 30, 2007, Loutrella M. Butler ("Butler") filed for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, alleging an onset date of February 1, 2007. (Tr. 103; 158). Throughout the administrative process, including an administrative hearing held on December 17, 2008 before an ALJ, Butler's claims were denied. (Tr. 12-30; 100-26; 127-33). After the Appeals Council denied review, pursuant to 42 U.S.C. § 405(g), Butler filed her complaint in this court on July 15, 2009. (Tr. 4-7; Doc. No. 1).

       2.      In her December 29, 2008 decision, the ALJ concluded, *inter alia*, that: (1) Butler had severe degenerative disc disease with cervical and lumbar radiculopathy, diabetes mellitus, diabetic neuropathy, mild hypertensive retinopathy, hypertension, asthma, plantar fasciitis, achilles tendinitis, obesity, depression, and anxiety; (2) her impairments did not meet or equal a listing; (3) she had the RFC to perform sedentary and light work not involving close visual acuity, and which consisted of routine, one-two step tasks, and involved no more than limited contact with the public and co-workers; (4) there were jobs that existed in significant numbers in the national economy that Butler could perform; and (5) she was not disabled. (Tr. 12 ¶ 4; 14 Findings 2 & 3; 17 Finding 4; 29 Finding 9; 30 ¶ 2; 30 Finding 10).[1]

       3.      This Court has plenary review of legal issues, but it reviews the ALJ's factual findings to determine whether they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

---

[1] All numbered paragraph references to the ALJ's decision begin with the first full paragraph on each page.

NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). It is more than a mere scintilla but may be less than a preponderance. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). If the conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

      4.    Butler raises several arguments in which she alleges that the determinations by the ALJ were legally insufficient or not supported by substantial evidence. These arguments are addressed below. However, upon due consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

      A.    First, Butler contends that the ALJ erred in concluding in her RFC assessment that Butler could perform light and sedentary work. In support of her contention, Butler primarily relies on interrogatories filled out by her treating physician, Richard Berger, D.O., on September 26, 2008 in which he opines that Butler had work preclusive limitations, and two sets of EMG studies from February 2008 showing radiculopathy and neuropathy. (Tr. 324; 327; 354-57). Butler contends that instead of relying on this evidence, the ALJ erroneously relied on a non-examining state agency physician who did not have access to the two allegedly key pieces of evidence. (Tr. 26 ¶ 2; 303-08). I note that the issue of the RFC assessment is reserved for the Commissioner and a physician's opinion thereon is not entitled to any special significance. 20 C.F.R. § 416.927(e)(2-3); S.S.R. 96-5p. The ALJ did not merely rely on the physical assessment from the state agency physician. Instead the ALJ discussed the evidence of physical impairments for five pages, including the two EMG studies and Dr. Berger's notes, and then ultimately concluded that she was giving considerable weight to the state agency assessment as it was supported by the medical evidence previously discussed. (Tr. 20 ¶ 3 - 24 ¶ 1; 26 ¶ 2).

      In detail, the ALJ also discussed why she decided not to give much weight to Dr. Berger's interrogatories and other assessments. (Tr. 26 ¶ 3 - 27 ¶ 1; 28 ¶ 1); see 20 C.F.R. § 416.927(d)(2) (providing that a treating physician is only provided controlling weight when her opinion is well supported by medically acceptable sources and not inconsistent with other substantial evidence in the record). Specifically, the ALJ concluded that despite Dr. Berger's work prohibitive assessments of Butler's abilities, his records did not reflect many significant abnormalities and he did not relate many positive findings but instead often parroted Butler's subjective complaints. (Tr. 354-57; 358-83; 412-17). The ALJ similarly concluded that the examinations from other medical sources and the diagnostic studies in the record did not support the level of limitation assessed by Dr. Berger. (Tr. 26 ¶ 3 - 27 ¶ 1; 298-302; 324; 327; 332-39; 390-409).

      After carefully reviewing the record, I conclude that the ALJ's decision to give limited weight to Dr. Berger's assessments was legally permissible and her RFC assessment was supported by substantial evidence. As outlined by the ALJ in her decision, the record evidence could reasonably support the conclusion that Dr. Berger's opinions were not in accord with the objective medical findings, and the conclusion that Butler was capable of performing some forms of light and sedentary work. The ALJ also did not ignore the findings of

the February 2008 EMG studies but instead incorporated those findings in both her step two severity analysis and in Butler's RFC. (Tr. 14 Finding 2; 17 Finding 4; 22 ¶ 3; 324; 327). As noted above, my duty is not to uncover whether the ALJ made the right or wrong choice but to decide whether she proffered sufficient explanation for her decision that a reasonable mind might accept as adequate to support her conclusions. Perales, 402 U.S. at 401. I find that the ALJ so proffered and, as a result, Butler's claims must fail.[2]

      B. Second, Butler argues that the ALJ failed to give her testimony the weight it deserved. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." Pysher v. Apfel, No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citing Van Horn v. Schweiker, 717 F.2d 871, 973 (3d Cir. 1983)). Moreover, such determinations are entitled to deference. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 271 (3d Cir. 2003). The ALJ recited Butler's testimony regarding her symptoms and limitations for approximately two pages and then concluded that while her impairments could reasonably be expected to cause the alleged symptoms, Butler's statements regarding the intensity, persistence and limiting effects of the symptoms were not fully credible. (Tr. 17 ¶ 3 - 19 ¶ 2). Specifically, the ALJ concluded that the degree of medical treatment Butler required, the reports of the various treating and examining doctors, the medical history, the exam findings, and Butler's testimony did not fully support the amount of limitation she alleged. (Tr. 19 ¶ 3 - 20 ¶ 3). After reviewing the record, I conclude that the credibility assessment of the ALJ is supported by substantial evidence. It is arguably not the only interpretation of the record evidence, but it is a reasonable and legally supported conclusion. Therefore, this claim must also fail.[3]

      C. Third, Butler asserts that the ALJ failed to recognize the gravity of her mental impairments. Contrary to Butler's argument, the ALJ did not ignore the medical evidence of her mental impairments but instead found her depression and anxiety to be severe. However, based on the record, the ALJ concluded that Butler's mental impairments did not preclude her from performing work. Butler primarily counters the ALJ's conclusion by citing to GAF scores in the record ranging from 49 to 55 and arguing that such scores do show work preclusive mental limitations. Contrary to Butler's assertion, a GAF score of 50 or less is not dispositive on the issue of mental disability as GAF scores do "not have a direct correlation to the severity requirements of the Social Security mental disorder listings." Gilroy v. Astrue, No. 08-4908, Slip Copy 2009 WL 3720580, at *1 (3d Cir. Nov. 9, 2009) (citing 66 Fed. Reg.

---

[2] Butler's similar arguments that the ALJ erred in: (1) rejecting Dr. Berger's RFC assessment; and (2) failing to credit the hypothetical questions to the VE which were based on Dr. Berger's assessments fail for the same reasons.

[3] Butler also alleges that the ALJ showed bias when she questioned whether the employment of Butler's close friend, who was paid through the Jewish Employment and Vocational Services to be Butler's caretaker, was primarily for Butler's benefit or for the caretaker's benefit. (Tr. 20 fn. 2). I find no evidence of bias in this statement. It is a legitimate question as no physician recommended a caretaker for Butler and it is simply not clear from the record who was the primary beneficiary of their presumably mutually agreeable arrangement.

50764-5 (2000)). In fact, the Third Circuit has held that neither a 50 GAF score nor even a 45 GAF score is conclusive evidence of a work preclusive mental impairment. Id.; Hillman v. Barnhart, 48 Fed. App'x 26, 29 n. 1 (3d Cir. 2002).

The ALJ's analysis of the evidence of Butler's mental impairments covers over two pages and ultimately she concluded that the GAF scores of 49 and 50 were not consistent with the psychological notes from the two mental health centers that treated Butler, the notes from the Frankford Hospital Pain Management Center, or the report from the consultative evaluator. (Tr. 24 ¶ 2 - 26 ¶ 1; 27 ¶¶ 2-3; 243-83; 298-302; 310; 332-39; 418-31). After reviewing the record evidence, I find that the ALJ's decision to discount the GAF scores of 50 and below and to find Butler's mental impairments were not work preclusive were reasonable interpretations of the evidence and record supportable. Moreover, even if the ALJ had fully credited the GAF's scores, Butler is legally incorrect that such "a GAF level [is] expressly defined as being inconsistent with the ability to hold a job." (Doc. No. 8, pg. 10). Therefore, Butler's argument on this issue is unpersuasive.

     5.    After carefully reviewing all of the arguments and evidence, I find that the ALJ's conclusion that Butler was not disabled was legally sufficient and supported by substantial evidence. As a result, Butler's request for relief must be denied and the decision must be affirmed.

An appropriate Order follows.